IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

vs.                                                                     CIVIL NO. 05-608 JP/LFG
                                                                        CRIM. NO. 00-1344 JP

MARCUS G. HAHN,

        Defendant-Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.  This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to

28 U.S.C. § 2255.  Movant Marcus G. Hahn ("Hahn") attacks the conviction and sentence entered

by the United States District Court for the District of New Mexico in United States v. Hahn, No. CR

00-1344 JP.  The Government filed its Response [Doc. 4] on June 27, 2005, seeking dismissal of the

case.  Hahn filed a Reply (Traverse) [Doc. 8] on August 11, 2005.  For the reasons given below, the

Court recommends that the Motion to Vacate be denied and the case be dismissed with prejudice.

2.  On December 31, 1999, Bernalillo County Sheriff's officers and federal law enforcement

officers executed a search warrant at Hahn's residence in Sandia Park, New Mexico.  They seized a

large number of marijuana plants, several loaded firearms, and several videotapes depicting Hahn

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

performing sexual acts on minors, at least some of whom appeared to be drugged.

3. On October 4, 2000, Hahn was indicted by a federal grand jury on charges including sexual exploitation of children (Counts 1-6), interstate transportation of child pornography (Counts 7-9), possession of child pornography (Counts 10-11), and distribution of a controlled substance without the knowledge of the recipient with the intent to commit a crime of violence against the recipient (Counts 12-16). Count 17 sought criminal forfeiture of certain property. Hahn initially pled not guilty to all counts. He subsequently changed his plea. Pursuant to a plea agreement, he pled guilty to Counts 3, 4, 5, 6, 15, and 16, and no contest as to Count 14. As part of the plea agreement, Hahn also waived his right to appeal the sentence.

4. Hahn was also charged in a separate case arising from the December 31, 1999 search of his home. That case, CR No. 00-82, proceeded to trial and resulted in a jury verdict of guilty on all four counts of a federal indictment charging marijuana and firearms offenses. (CR No. 00-82 will hereinafter be referred to as "the marijuana / firearms case"). Hahn received a sentence in the marijuana / firearms case of 480 months, or 40 years.

5. Counts 3 and 4 in the marijuana / firearms indictment were charged under 18 U.S.C. § 924(c)(1), which deals with possession of firearms in furtherance of drug trafficking crimes. Section 924(c)(1)(D) provides that:

> Notwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . .

6. The Court originally ordered a consolidated sentencing hearing in both cases, set for June 6, 2001. At that hearing, however, the Government raised the question whether the above-quoted

2

language in 18 U.S.C. § 924(c)(1)(D) restricted the Court's discretion to impose concurrent sentences in the two separate cases. Hahn's attorneys argued that the sentences in the two cases could and should run concurrently. To allow for further briefing on this issue, the Court continued the sentencing hearing in the sexual abuse case. At the continuation of the hearing on August 28, 2001, the Court announced that it had no alternative but to order that the sentences run consecutively, given the language of § 924(c).

7. Hahn was sentenced in the sexual abuse case to a term of 240 months on each of the counts to which he pled guilty, those sentences to run concurrently with each other, and an additional 52 months for the count to which he pled no contest. The total sentence in the sexual abuse case, therefore, was 292 months, or more than 24 years. This sentence was consecutive to the 40-year sentence in the marijuana and firearms case, due to the mandatory consecutive rule of 18 U.S.C. § 924.

8. Hahn appealed his conviction in the sexual abuse case. The appeal was dismissed on the ground that Hahn waived his right to appeal as part of his plea agreement and that Hahn's waiver of his appeal rights was valid and enforceable. United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004). This habeas petition followed.

<u>Claims Presented</u>

9. Hahn raises the following claims in this § 2255 proceeding:

A. His pleas of guilty and *nolo contendere* were involuntary, because the court did not properly advise him of the direct consequences of his pleas, and because the pleas were induced by ineffective assistance of counsel in that counsel misrepresented the consequences of his plea and failed to advise him of the consequences of waiving his right to appeal.

B.  His attorneys were further ineffective in the following ways:

(1)  Counsel failed to conduct an adequate investigation and as a result they:  failed to discover exculpatory information; failed to bring a commerce clause challenge; failed to consult an expert witness; failed to challenge multiplicity of counts and multiple sentences; and failed to investigate the basis for a motion to suppress.

(2)  Counsel were ineffective at sentencing, in that they:  failed to submit a timely request for downward departure; were not prepared to address a request for sentence enhancement based on a vulnerable victim; were caught by surprise at the June 6, 2001 sentencing hearing when the Government requested consecutive sentences; failed to challenge effectively the presentence report; and failed to effectively challenge the appellate waiver, with the result that Hahn was later prevented from attacking the consecutive sentences.

(3)  Counsel had a conflict of interest in failing to acknowledge their earlier mistakes at the time of sentencing and file a motion to withdraw the plea.  In addition, they continued to represent Hahn in his direct appeal without raising an ineffective assistance claim.

(4)  The above errors by counsel were cumulative.

C.  The pleas rested in large part on material misrepresentations and non-disclosures by the prosecution, in that the Assistant U.S. Attorneys on the case did not reveal, until the time of sentencing, that they would argue for mandatory consecutive sentences.

D.  The conviction violated the rule of <u>Booker</u> / <u>Blakely</u> in that the marijuana / firearms conviction was not alleged in the Indictment not proved beyond a reasonable doubt.

E.  The state court judge, who signed the search warrant that led to this prosecution, was impartial and impaired.

4

<u>Factual Background</u>
<u>of Plea and Sentencing Hearings</u>

10.  As previously noted, the evidence supporting both of the prosecutions – one on the

marijuana / firearms charges, the other on charges of sexual abuse of minors – was initially seized in

the same raid on Hahn's home.  The two cases proceeded independently, and the marijuana / firearms

case came up first for trial.  The jury reached a verdict in that case on December 7, 2000 and

convicted Hahn on all counts, including the charges under 18 U.S.C. § 924(c) which gave rise to the

issue of mandatory consecutive sentences.  [Doc. 106 in CR. 00-82].[2]

11.  Trial in the sexual abuse case was set for February 5, 2001 but was later continued to

May 7, 2001.  In the interim, the parties reached a plea agreement which was presented to the Court

at a plea hearing on March 22, 2001.  [Docs. 27, 37, 47 and 49; Transcript of Plea Hearing, Sealed

Exhibit in CR. 00-1344, hereafter referred to in the format "PH"].

12.  At the plea hearing, the district judge had Hahn sworn in, then addressed him directly and

asked him if intended to plead guilty and no contest, as described above.  Hahn responded that he did.

When asked, Hahn confirmed that he had read the indictment and discussed it with his attorneys, and

that he understood their explanations regarding the charges in the indictment.  Hahn told the judge,

under oath, that he was satisfied with his attorneys' representation.  [PH at 4-7].  The judge read the

charges to Hahn and ascertained that Hahn understood the nature of each of them.  [PH at 7-10].

He told Hahn that all of the charges were felonies and told him that acceptance of the proposed pleas

would constitute conviction of the charged crimes.  Hahn stated that he understood.  The Court then

_____

[2]The marijuana / firearms conviction was upheld on appeal.  <u>United States v. Hahn</u>, 38 Fed. Appx.
553 (10th Cir. Apr. 18, 2002).  Hahn thereafter brought a Motion Under 28 U.S.C. § 2255 in that
case (Civ. 04-44 JP/ACT).  The § 2255 Motion was denied, and Hahn's appeal of theat decision is
pending.

stated as follows:

> If I accept your pleas of guilty and impose a sentence that is longer or more severe than you expect, you will still be bound by your plea and you will not have a right to withdraw your plea as long as your sentence is within the guideline sentencing range.

[PH at 10]. Hahn again told the Court that he understood these things. [Id.].

13. The Court further asked Hahn if he'd read and understood the plea agreement and discussed it with his attorneys; Hahn stated that he had. The Court carefully went through the plea agreement with Hahn and discussed it with him in detail, providing him with the maximum penalties, including terms of imprisonment, fine, supervised release, penalty assessment, and restitution, as to each count [PH at 11]. Hahn told the Court he understood these matters and had no question about the maximum penalties that could be imposed. [PH at 11-13].

14. The Court noted the parties' stipulation that Hahn demonstrated acceptance of personal responsibility for his criminal conduct, entitling him to a reduction of three offense levels in calculating his guideline sentencing range, contingent on his providing appropriate information to the Probation Office. Hahn testified that he understood these provisions and understood as well his obligation to provide truthful and complete information to Probation. Hahn also stated that his attorneys explained to him his obligations under state and federal law to register as a sex offender, and he agreed to comply with those obligations. [PH at 13-14].

15. The judge reviewed with Hahn and explained the terms of the plea agreement regarding Hahn's waiver of appellate rights, and Hahn stated that he agreed to waive his rights to appeal.

16. The Court recited the counts that the Government agreed to dismiss in exchange for Hahn's pleas. [PH at 16-17].

17.  Hahn further testified that his pleas were freely and voluntarily made and were not the result of force or threats or promises, apart from those set forth in the plea agreement.  [PH 17-18].

18.  The judge advised Hahn of the rights he would forfeit as a convicted felon and explained to Hahn that he would be sentenced under the Sentencing Guidelines.  Hahn said that he had discussed these things with counsel and understood them.  [PH at 18-19].

19.  Then Court then turned to counsel and asked them how Hahn's recent conviction in the marijuana / firearms case would affect sentencing in this case.  The Government responded that the earlier conviction would give Hahn one criminal history point, in addition to a second point for a prior misdemeanor conviction.  Nothing was said by either party at this point about the effect of mandatory consecutive sentences as between the two cases.  [PH at 19-20].

20.  The Court advised Hahn that he had the right to plead not guilty and proceed to trial before a jury.  He advised Hahn in detail of the rights he was giving up by entering the proposed pleas.  [PH at 21-22].  Hahn understood that he was giving up those rights.  [Id.].  Hahn provided the Court, in his own words, the factual basis for his pleas to each count to which he intended to plead guilty.  Government counsel set forth the facts she was prepared to present through competent, admissible evidence and beyond a reasonable doubt should she proceed to trial.  Both Hahn and his attorney agreed that the Government would be able to present to a jury the evidence so summarized.  [PH at 22-32].  The proffered evidence covered each essential element of each crime charged.  [Id.].

21.   Hahn's attorney told the Court why it was in his client's best interest to plead guilty and no contest, as proposed, and the Court then took Hahn's pleas to each of the counts.  [PH 33-35].  He admitted committing the acts with which he was charged.  [Id.].

22.  After taking Hahn's pleas, and as authorized under Fed. R. Crim. P. 11, the Court stated

that he would not make an immediate decision as to whether he would accept the pleas but would defer that decision until after he had read the presentence report. He explained to Hahn his rights in connection with compilation of the presentence report and with sentencing. [PH at 35-36].

23. Hahn's attorney asked that, to avoid the additional criminal history impact in this case of Hahn's conviction in the marijuana / firearms case, the sentencing in this case be done before the sentencing in the marijuana / firearms case, or else that the two sentencings be done simultaneously. The Government having no objection, the Court ordered that sentencing hearings be set in both cases on the same date. [PH at 36-38].

24. The issue of mandatory consecutive sentences, due to the conviction under 18 U.S.C. § 924(c) in the marijuana / firearms case, never arose during this plea hearing.

25. The U.S. Probation Office thereafter proceeded to compile a presentence report. The report noted that, if Hahn went to trial and were convicted on all counts in the Indictment, including counts that the Government agreed to drop under the plea agreement, the guideline imprisonment range would be a life sentence. [Presentence Report (sealed), June 5, 2001, at 22].

26. The first part of Hahn's sentencing hearing in the consolidated cases occurred on June 6-7, 2001. At the beginning of the hearing, the Court asked counsel whether they had briefed the issue of whether the sentence in the marijuana / firearms case was required to be served consecutively with the sentence in the sexual abuse case. Defense counsel responded that he had not briefed that issue, as it was the defense position that the Court had wide discretion to order concurrent sentences. He stated that on the preceding day, the prosecution told defense counsel for the first time that the Government would argue that the Court had no discretion to run the sentences concurrently. [Sentencing Hearing I, June 6-7, 2001, at 48-49; hereinafter referred to in the format, "SH I"].

27.  The Probation Officer present at the hearing told the Court that the U.S. Probation Office was of the opinion that the sentences in the two cases had to be run consecutively, because of the language of 18 U.S.C. § 924(c).  The Government took the position that the two sentences had to be run consecutively, or at least that the sexual abuse sentence would have to be run consecutively to the firearms portion of the earlier case.  [SH I at 47-49, 82-83].

28.  Defense counsel argued vigorously on behalf of Hahn that there was no authority for mandatory consecutive sentences as between the two cases, although he conceded that the firearms counts had to be run consecutively to any other sentence within the marijuana / firearms case.  [SH I at 49].

29.  The Court told the parties, "I think I need everyone's help on researching this issue . . . It's coming up at the last minute; I have never seen a case of this nature and I would like to have some guidance on it."  [SH I at 48, 50].  The judge proceeded with the sentencing in the marijuana / firearms case and asked the parties to do some additional research on the issue of the Court's discretion on consecutive or concurrent sentences under 18 U.S.C. § 924(c), after which he would reconvene the hearing.  The judge stated later in the hearing, "I'm much concerned about making a judgment in a rushed situation," and declined any "rush to judgment."  Instead, he proceeded cautiously and with circumspection by not sentencing on both matters when there was some uncertainty.  It was clear as well that none of the attorneys involved in the case had ever previously been faced with this exact legal issue.  In addition, the defense made clear that it had no idea until the preceding day that Probation would recommend, and the Government would argue for, mandatory consecutive sentences.  [SH I at 48, 50, 53-54, 79-80, 105].

30.  Following some quick, initial research, counsel for the Government returned to Court

with a citation to <u>United States v. Gonzales</u>, 520 U.S. 1, 117 S. Ct. 1032 (1997), a case arising in New Mexico.  <u>Gonzales</u> involved a defendant who had previously been convicted and sentenced in state court on firearms charges, then later faced federal charges brought under 18 U.S.C. § 924(c). The Supreme Court held that the federal district court had no choice but to run the federal sentence consecutively to the state term, and held as well that § 924(c) trumps 18 U.S.C. § 3584 (which gives the Court discretion to order concurrent sentences.  [SH I at 88-90, 96].

31.  Hahn's attorney responded by pointing out that, in the <u>Gonzales</u> case, the state sentence had already been imposed prior to the sentencing on the § 924(c) charges whereas, in the present case, it was the sentence under § 924(c) which had already been imposed.  He pointed out that to interpret the language of § 924(c) in the manner urged by the Government would be to import § 924(c) into every other federal sentencing statute, and into state statutes as well.  Defense counsel cited <u>United States v. Jones</u>, 986 F.2d 42 (3d Cir. 1993), in which a circuit court held there was discretion to run a sentence under § 924(c) concurrently with a state court sentence that had previously been imposed.  [SH I at 90-94].

32.  The Government noted that <u>Jones</u> predated <u>Gonzales</u>, and that it involved two distinct prosecutions, separated in time and by jurisdiction, whereas the present case is a consolidated sentencing in two federal cases which arose at the same time, and in which the sequence of sentencing was purely fortuitous.  [SH I at 94-95].

33.  All parties agreed that the language of the <u>Gonzales</u> case was confusing on the issue of whether § 924(c) trumps 18 U.S.C. § 3584.  The Court noted that "I would prefer to have more time to study it," and later stated "I don't intend to complete the sentencing today" in the sexual abuse case.  The hearing in the sexual abuse case was continued to allow counsel to brief the mandatory-

consecutive issue.  [SH I at 97-99, 103].

34.  The parties did brief the issue [*see*, Doc. 132 in CR. 00-82; Doc. 60 in CR 00-1344].  In addition, the defense filed an Alternative Motion for Downward Departure [Doc. 58 in CR 00-1344], to be considered in the event the Court decided it had no option but to order consecutive sentences. One of the grounds for the motion was the "unexpected effect of consecutive sentences."  The defense noted that Hahn faced a 40-year sentence for having guns in connection with his marijuana operation (CR 00-82), and that if the sentence in the sexual abuse case had to be run concurrently with that in CR 00-82, "he will die in prison."  Defense argued that this was a "horrific consequence" and did not reflect the true level of Hahn's culpability.  In addition, counsel argued, Hahn had made substantial progress in post-offense rehabilitation.

35.  The Government's brief in response [Doc. 59 in CR 00-1344] discussed Hahn's extensive criminal history, including his large marijuana operations and previous firearms conviction.  The Government argued that there were several hours of videotapes depicting Hahn engaging in sexual acts with young boys, and the tapes had been made over a period of approximately two years. Further, as recently as two days before the search warrant was executed,  Hahn had videotaped two young boys nude in the bathtub at his home.

36.  The sentencing hearing was reconvened on August 28, 2001.  At that time, the Court announced its decision on the mandatory-consecutive sentences issue as between the two cases, stating, "After reviewing all of the relevant law and the parties' briefs on the case, it's my conclusion that I have no alternative but to order that it be imposed as a consecutive sentence."  [Sentencing Hearing II, August 28, 2001, at 9; hereafter referred to in the format, "SH II at 9"].  The Court then turned to Defendant's alternative motion for a downward departure, based in part on the "unexpected

11

effect of consecutive sentences" and, after hearing argument of counsel, ruled as follows:

> With respect to the alternative motion for downward departure, in regard to the first ground, which is that the sentence would be unexpectedly severe in view of the fact that it must be ordered to run consecutively, I don't think that's a valid ground for downward departure. The Tenth Circuit has specifically stated in <u>United States v. Caldwell</u> that [a belief] by the sentencing judge that the punishment set by the commission is too severe may not be a ground for departure. I agree that this is a very severe sentence since it must be imposed to run consecutively, but I don't think that's a basis for downward departure.

[SH II at 21-22]. The Court also rejected the other grounds urged by Defendant and denied the alternative motion for downward departure. [<u>Id.</u>, at 22-23].

37. After the Court told the parties the sentence he intended to impose, defense counsel addressed the issue of Hahn's waiver of his right to appeal. Attorney Converse argued that the defense would "need to evaluate the waiver of the right to appeal." She stated that, during the course of plea negotiations, she "proposed to the government that they let us argue for concurrent time, we let them argue for consecutive time. And I'm feeling a little bit sandbagged as a result of this. I don't think the Court anticipated either that the law that you eventually determined, that the law requires consecutive sentencing . . . . [T]he government knew all along that we intended to argue for concurrent sentencing when we entered into this . . . ." [SH II at 54-55].

38. Government counsel disputed that the parties discussed or agreed that the defense would argue for concurrent sentences, saying "[t]he law is clear, it can't be more clear on consecutive and concurrent sentences." Defense counsel responded that there's a question whether the issue of consecutive versus concurrent was ever within the scope of the plea agreement, and stated that Hahn might appeal the consecutive sentence determination anyway, in spite of his waiver of appeal. [SH

II at 54-56].    The Court then proceeded to pronounce sentence.

39.  On September 4, 2001, the Court entered its Memorandum Opinion and Order [Doc. 74 in CR 00-1344], holding that the sentence in this case must run consecutively with the sentence in the marijuana / firearms case.  This ruling was based on the "plain language" of 18 U.S.C. § 924(c) and on the legislative history of that statute.[3]

40.  As noted above, Hahn appealed his sentence and the appeal was dismissed on grounds that Hahn had validly waived his right to appeal.

41.  Other facts will be set forth below, as relevant to the discussion of particular issues.

Discussion

I.
Involuntariness of Plea Based on
Court's Alleged Failure to Advise

42.  Hahn's first contention is that the judge who took his plea failed to advise him of one of the direct consequences of his plea – that is, the Court's lack of discretion to run the sentence in the sexual abuse case concurrently with the sentence in the marijuana and firearms case.  Hahn contends that the judge was required to inform him that, if he pled as planned, the mandatory-consecutive-sentence rule would "ensure that he would receive the functional equivalent of a life sentence" [Doc. 1, at 16-17] and that this alleged failing violated his rights under the Due Process Clause, the Sixth Amendment and Fed. R. Crim. P. 11 and rendered his pleas involuntary.

43.  Rule 11 provides that before the Court accepts a guilty or no-contest plea, the defendant

---

[3]*See*, S. Rep. No. 98-225, at 313 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3491: "The Committee has concluded that subsection 924(c) should be completely revised to ensure that all persons who commit Federal crimes of violence . . . receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense *or for any other crime* and without the possibility of a probationary sentence or parole."  [Emphasis added].

13

must be placed under oath and the Court must address him personally in open court and inform him of his rights, of the nature of the charges against him, of the maximum possible penalty, of the terms of any plea provision waiving the right to appeal or collaterally attack the sentence, and other matters. The Court must also determine that the plea is voluntary and not the result of force, threats or promises other than those in the plea agreement, and that there is a factual basis for the plea.

> [A]lthough the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary . . . .

McCarthy v. United States, 394 U.S. 459, 465, 89 S. Ct. 1166, 1170 (1969).

44.   One of the judge's duties under Rule 11 is to advise the defendant of the penalties he faces by pleading guilty, including all "direct consequences" of his plea.  Even if the Court were to conclude, which it does not, that the sentencing judge did not fully comply with a discussion of direct consequences under Rule 11, it does not inevitably follow that the defendant's plea of guilty or *nolo contendere* is invalid and subject to being overturned on collateral attack. United States v. Timmreck, 441 U.S. 780, 99 S. Ct. 2085 (1979).  Indeed, when a defendant enters a guilty plea, his later request for collateral relief, predicated on a violation of Rule 11, is generally foreclosed.  There is a narrow exception, in the limited circumstance where violation of the Rule amounts to "a fundamental defect which inherently results in a complete miscarriage of justice . . . [and is] inconsistent with the rudimentary demands of fair procedure." Timmreck, 441 U.S. at 783, *quoting from* Hill v. United States, 368 U.S. 424, 82 S. Ct. 468, (1962).

45.   Here, the alleged violation of Rule 11 is the judge's failure to inform Hahn, prior to entry of his pleas, that the Court lacked discretion to run his sentences concurrently.  This is not a case that

falls within the narrow range of cases where a "fundamental defect caused a miscarriage of justice." Hahn's sentence, while extremely long, was within the contemplation of Congress as well as the sentencing guidelines, and was based on the conduct for which he was convicted (in the marijuana / firearms case) and to which he pled (in the sexual abuse case). Even if the district judge erred in the determination that he lacked discretion to run the sentences concurrently, it is clear that Hahn always faced the possibility that the judge would, in his discretion, run the sentences consecutively. The fact that the judge did order consecutive sentences does not mean that a miscarriage of justice occurred.

46.   Indeed, the Tenth Circuit already ruled, in Hahn's direct appeal, that:

> [E]ven if the district court's conclusion regarding its lack of sentencing discretion was in error, a determination that we need not reach here, this error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings . . . .  Indeed, the district court's consecutive sentence is specifically allowed by 18 U.S.C. §§ 924(c) and 3584.  Subjecting Mr. Hahn to a sentence sanctioned by Congress does not constitute an error seriously affecting the fairness, integrity, or public reputation of judicial proceedings . . . [nor] constitute a miscarriage of justice.

United States v. Hahn, 359 F.3d 1315, 1329 (10th Cir. 2004).

47.   This being the case, the Court cannot say that there was any prejudicial error in the Court's failing to advise Hahn, prior to entry of his pleas, that the sentences would have to be run consecutively. The judge clearly informed Hahn of the maximum sentence he faced on the charges to which he pled, and Hahn was aware before he entered his pleas that consecutive sentences could be ordered. "[A] district court has no duty to inform the defendant of the possibility of consecutive sentences – even if mandated . . . ." United States v. Carver, 160 F.3d 1266, 1268 (10th Cir. 1998).

48.   The Court finds no miscarriage of justice in connection with the plea colloquy and concludes that habeas relief is not available on this claim.

II.
Alleged Ineffectiveness of Counsel in
Misrepresenting the Consequences of the Plea

49.   Hahn argues that he was told by his defense attorneys that the Court would have discretion to impose the sentence in the child-pornography case concurrently with the sentence in the marijuana-and-firearms case, and that counsel was of the opinion that the judge would likely exercise his discretion in the direction of concurrency.  [Doc. 1, 7-8].  Hahn also contends, somewhat inconsistently, that his counsel unequivocally told him that the judge would be required to impose the sentence in this case concurrently with the sentence in the prior case.  [Doc. 1, at 8, 21].  In either case, Hahn states that his attorneys' assurances with regard to concurrent sentences was the principal inducement for his plea. [Doc. 1, at 8].  He says that, if counsel and the Court had informed him that consecutive sentences were mandatory, he would not have entered the pleas but would instead have maintained his plea of not guilty and insisted on going to trial.  [Doc. 1, at 13; Doc. 8, at 12].

50.   In an affidavit attached to Hahn's § 2255 petition, one of Hahn's trial attorneys states as follows:

> 6.  . . . Mr. Hahn pleaded guilty and no contest with the hope of a sentence which would be imposed concurrently with the sentence in the marijuana case.
> 
> 7.  In advising Mr. Hahn of the consequences of his plea, I told him that if he pleaded guilty and no contest, the District Court would have discretion to impose sentence in this case concurrently with the sentence in the marijuana case.
> 
> 8.  In advising Mr. Hahn of the consequences of his plea, I also told him that while I could not make any guarantees about his sentence, in my opinion the District Court Judge in this case seemed inclined to exercise his discretion to impose sentence concurrently with the sentence in the marijuana case.
> 
> 9.  Prior to entry of Mr. Hahn's pleas, I never informed Mr. Hahn that the sentence in this case could not be run concurrently with the sentence in the marijuana case as a matter of law.

16

[Doc. 1, Ex. C, Declaration of Kari Converse].

51.  To establish ineffective assistance of counsel, Hahn must make a two-pronged showing; (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced his defense in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  To prove deficient performance, Hahn must overcome the presumption that counsel's conduct was constitutionally effective.  Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight.  Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995).  In order to be found constitutionally ineffective, counsel's performance must be shown to have fallen below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  In addition, the burden is on petitioner to show there is a reasonable probability that, but for counsel's ineffective assistance, the result of the proceeding would have been different.  Id., at 694.

52.  The Court finds that Hahn has not met his burden under either prong of the Strickland test.  The record does not support the claim that counsel's performance was constitutionally deficient nor did Hahn establish that any incorrect advice by his attorney served to prejudice him in these proceedings.  His burden is to show that:

> counsel's constitutionally ineffective performance affected the
> outcome of the plea process.  In other words, in order the satisfy the
> "prejudice" requirement [of Strickland v. Washington], the defendant
> must show that there is a   reasonable probability that, but for
> counsel's errors, he would not have pleaded guilty and would have
> insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

53. The "reasonable probability" that petitioner must show in this context is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The Tenth Circuit holds that a petitioner claiming ineffective assistance of counsel in the plea process fails to satisfy the second prong of Strickland when the record indicates that the petitioner knowingly decided not to risk a trial with its possibility of a much longer period of imprisonment, and other collateral detriments. Lasiter v. Thomas, 89 F.3d 699, 703 (10th Cir. 1996). The record in this case indicates that Hahn knowingly chose to forego trial. Indeed, in light of the Government's proffer of evidence and Hahn's articulation of the factual predicate to sustain the plea, the decision to plead was prudent. Had there been no plea and had Hahn been convicted on all counts charged, he would have faced an even more onerous sentence than that imposed.

54. If a plea is found to be involuntary, the appropriate post-conviction remedy is withdrawal of the plea, which puts the petitioner back in the position he was in before he entered the plea. Gill v. Turner, 443 F.2d 1064, 1066 (10th Cir. 1971). A court's determination that a plea of guilty is involuntary is not an adjudication of the defendant's guilt or innocence and does not constitute a bar to re-trial based on the original indictment. Wynn v. Page, 390 F.2d 545, 546 (10th Cir. 1968). Upon withdrawal of a plea, the Government has the option of trying a petitioner on all original charges, including any that were dropped in connection with the plea agreement. If convicted on these previously-dropped charges, the defendant could be sentenced to a longer term than he received under the voided plea agreement. Such a remedy is not always to the defendant's advantage.

> [I]t should be pointed out to Mr. Shupe and the many others who are filing petitions for a writ of habeas corpus in this court, that it is possible that some may be doing themselves more harm than good.

Shupe v. Sigler, 230 F. Supp. 601, 606-07 (D. Neb. 1964).

18

55. Hahn acknowledges that "[t]he remedy for an involuntary plea is to permit the Accused to withdraw the plea and restore him to the position which he occupied before the unconstitutional plea." [Doc. 8, at 13]. The position Hahn occupied before his plea was stark: He was facing 17 felony counts including, *inter alia*, six counts of possession and transportation of child pornography, six counts of sexual abuse of minors for purposes of producing videotapes, and three counts of distribution of a controlled substance to a minor victim with the intent of committing a crime of violence, *i.e.*, sexual exploitation of a minor. [Indictment, Doc. 1 in CR 00-1344].

56. It is undisputed in this case that the Government had substantial videotape evidence to support the sexual exploitation charges against Hahn. It is also clear from the record that Hahn had good reason for not wanting to proceed to trial in this case. Indeed, the Court can find no objective "reasonable probability" that Hahn would have insisted on going to trial if he had been advised that the sentence he received pursuant to his guilty pleas in the sexual abuse case would have to be run consecutively to the sentence in the marijuana / firearms case.

57. Hahn acknowledged that he was guilty of committing six of the crimes charged against him and he conceded, by pleading no contest to a seventh charge, that the Government had enough evidence to convict him on that count. These charges involved repeated acts of sexual abuse on minors, some of the counts including charges that Hahn drugged his victims prior to performing sexual acts on them. At the plea hearing, the Court asked Hahn's attorney why he thought it was in Hahn's best interest to enter the pleas. He responded that, aside from the one count to which Hahn intended to plead no contest, the defense did not have a reasonable expectation of success at trial and:

> Secondly, we believe that a trial of this case would ultimately be bad
> for everyone. Mr. Hahn, as you know, is facing 40 years in custody
> from the other case and a substantial amount of time in this case. He

19

will be spending, in all likelihood, the majority, if not the remainder of his natural life in prison.  The heightened publicity that would be brought on Mr. Hahn as a result of a trial would certainly, in my belief, pose him greater risk of injury or death in prison, should that become the case.  Given the benefit of acceptance of responsibility, the perceived marginal benefit . . . in going to trial in terms of our chances of success and the potential risks to Mr. Hahn, I believe that this plea is in his best interest.

[PH at 33-34].

58.  Hahn received a sentence of 240 months on each of the six counts to which he pled guilty; these sentences were ordered to be run concurrently with each other.  Because these sentences were run concurrently, the only way Hahn could have benefitted by going to trial (even assuming the Government did not pursue all of the 17 counts originally brought), would be if Hahn were acquitted on every one of these charges.  His attorney acknowledged, and Hahn himself conceded by pleading guilty to these six counts, that "we don't have a reasonable expectation of success at trial."  [PH at 33].  If, as is reasonable to suppose, the jury would have convicted him of even one of these six counts, he would still face a sentence of at least 240 months and would therefore be in no better position, and possibly much worse, if he had proceeded to trial.[4]

59.  In addition, Hahn received a benefit in sentencing from his acceptance of responsibility.

60.  And finally, there were other reasons aside from sentencing considerations why it was

---

[4]    Hahn does not contest his "factual guilt"; that is, he does not contend that he pled guilty without understanding the nature of the charges against him, nor does he claim that there was no factual basis for the plea.  It is, rather, his alleged misunderstanding of the consequences of his admission of guilt that forms the basis for his habeas petition.  "There are essentially two ways under our system of criminal justice in which the factual guilt of a defendant may be established . . . .  The first is by a verdict of a jury . . . .  The second is by the defendant's own solemn admission in open court that he is in fact guilty of the offense with which he is charged . . . .  The Court has repeatedly emphasized that a guilty plea for federal purposes is a judicial Admission of guilt conclusively establishing a defendant's factual guilt."  [Internal punctuation omitted].  Henderson v. Morgan, 426 U.S. 637, 647-48, 96 S. Ct. 2253, 2259 (1976) (White, J. concurring).

in Hahn's best interest to avoid trial.  As his attorney put it, publicity surrounding the charges of child

sexual abuse and exploitation would "certainly" [PH at 34] subject Hahn to a greater risk of injury

or death in prison.  And there was no question that Hahn was going to prison, as he had already been

convicted by a jury in the marijuana / firearms case.

61.  At the continuation of the sentencing hearing on August 28, 2001, Government counsel

sought to introduce a videotape, compiled by the Government from the several hours of videotapes

of sexually explicit conduct involving Hahn and minor boys.  [SH II at 12].  Counsel for the

Government argued that the videotape was relevant to the defense motion for downward departure

based on post-offense rehabilitation, as it showed "the extent of the defendant's psychosexual

problem and the length that he has to travel [therapeutically] to alleviate that problem," as well as the

fact that defendant was willing to take the risk of giving drugs to his minor victims in order to satisfy

his sexual urges, even though the drugs caused the victims severe respiratory distress, as evidenced

by labored breathing, during the acts of sexual abuse.  [SH II at 16].  The Government also argued

that the videotape would be useful to the Court in determining where within the guideline range the

defendant should be sentenced.  [SH II at 16-17].

62.  While conceding that Hahn "doesn't deny that he did what is shown in the videotapes"

[SH II at 13], and acknowledging that there were about 10-12 hours of videotape depicting such acts

[Id., at 43], defense counsel strongly objected to introduction of the tape at the sentencing hearing.

Counsel filed a Motion to Preclude Evidentiary Hearing [Doc. 57 in CR 00-1344], and at the August

continuation of the sentencing hearing, argued that the behavior depicted on the tape was already

described in the presentence report.  [SH II at 13-14].  In addition, defense counsel argued, the

Government "seeks only to inflame the Court" by introducing the videotape and to induce the Court

to impose a sentence at or near the top of the guideline range [Id., at 37].

> Your Honor has a very complete and full picture from the presentence report. This videotape does not contradict in any way the information in the presentence report. There is no reason to invade that child's privacy, there is no reason to humiliate, degrade Mr. Hahn. You have the information you need to make the decision and there is no noninflammatory reason to be viewing this.

[Id., at 43].

63. If the defense felt that one eight-minute videotape would be "inflammatory" to an experienced trial judge, it is reasonable to assume that Hahn and his counsel would not be eager to go to trial and risk having a jury see several hours of these tapes. Indeed, there are no circumstances under which the Court could find that it would have been in Hahn's interest to take the case to trial. Under the plea agreement, the Government dropped ten counts of the 17-count indictment, in return for which Hahn pled guilty to six counts and no contest to one count. For this, and the other reasons discussed above, it is clear that Hahn received substantial benefits by entering these pleas.

64. Hahn states in his reply brief that, but for counsel's erroneous advice concerning mandatory consecutive sentences, he "would not have pleaded guilty and would have instead either insisted on proceeding to trial, or re-evaluated the Government's proposed plea bargain offer." [Doc. 8, at 12]. As noted above, Hahn cannot raise a legitimate argument that it would have been in his interest to proceed to trial. Alternatively, he says that he would have "re-evaluated" the plea offer; however, this is too vague a contention on which to base a finding that he was prejudiced by his attorneys' conduct.

65. As noted above, by entering his plea, Hahn received the benefit of acceptance of responsibility and, in addition, the Government dropped ten counts of the indictment. Even in the

unlikely event that Hahn's attorneys could have negotiated his plea to one single count, the sentence resulting from any single count would necessarily have been run consecutively to the sentence in CR 00-82; there is no way his counsel could have negotiated away that particular effect of the § 924 conviction, given the trial judge's determination.  It is not at all apparent how any "re-evaluation" of Hahn's guilty plea, in the light of his knowledge of mandatory consecutive sentences, would have resulted in an outcome more favorable to Hahn than the result he achieved by entering the pleas that he did.  And Hahn has not suggested any way this might have occurred; instead, he merely argues that he would have "re-evaluated" the situation.

66.  Because the mandatory-consecutive rule would apply to any sentence Hahn received had he gone to trial and been convicted, to the same extent that it affected the sentence he was given as a result of pleading guilty, the mandatory-consecutive rule cannot have been the decisive factor in Hahn's decision to plead guilty.  Hill v. Lockhart, *supra*, 474 U.S. at 60 ("petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence [as his attorney incorrectly advised him] would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted").

67.  The Court finds that Hahn received a substantial benefit by entering the plea that he did, and he fails to establish a reasonable probability that any error by trial counsel, in failing to recognize and advise him of the mandatory consecutive sentence effect of § 924, worked to his prejudice.  Hahn had, objectively, very good reasons for not wanting to go to trial, as detailed above.  Because Hahn failed to satisfy the second prong of Strickland v. Washington, the Court denies his  habeas petition on this claim.

III.

Alleged Ineffectiveness of Counsel in
Failing to Advise of Consequences of Appellate Waiver

68.  Paragraph 12 of Hahn's plea agreement reads as follows:

 The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.

a.  Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

b.  Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the guideline range applicable to the statutes of conviction as determined by the Court after resolution of any objections by either party to the presentence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the Court in resolving any contested sentencing factor.  In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the Court may depart upwards from the applicable sentencing guideline range as determined by the Court.

69.  At the plea hearing, the Court carefully and thoroughly explained these provisions, and Hahn told the Court that he understood and agreed to the provision in the plea agreement by which he waived his right to appeal.  [PH at 16].  Hahn knew that he would waive various constitutional rights by pleading guilty, and he asserted that his plea was freely, voluntarily and intelligently made. Hahn did not waive his right to bring a collateral attack under 28 U.S.C. § 2255.

70.  Hahn claims that his counsel was ineffective in failing to advise him of the consequences of this waiver of his right to appeal.  He did, in fact, file a direct appeal of his conviction, as noted above, and the Tenth Circuit dismissed the appeal on grounds that Hahn had agreed to a valid waiver

24

of his right to appeal.

71.   A defendant may validly waive his statutory right to appeal, <u>United States v. Atterberry</u>, 144 F.3d 1299, 1300 (10th Cir. 1998); but the waiver, to be enforced, must be entered into knowingly and voluntarily.   <u>United States v. Elliott</u>, 264 F.3d 1171, 1173 (10th Cir. 2001). In Hahn's direct appeal, the Tenth Circuit specifically found that Hahn's appellate waiver was "knowing and voluntary," citing the broad and plain language of the plea agreement and the fact that there was nothing in the record to indicate that Hahn retained the right to appeal the specific sentencing question at issue, *i.e.*, whether the court failed to recognize that it had discretion to impose his sentence concurrently with the sentence in the marijuana-and-firearms case.   <u>United States v. Hahn</u>, *supra*, 359 F.3d at 1328-29.

72.   The Tenth Circuit also held there was no "miscarriage of justice" in Hahn's case that would render his plea agreement and appellate waiver unenforceable.   However, one ground for finding a miscarriage of justice, which the court explicitly declined to reach, is ineffective assistance of counsel.   <u>Id.</u>, at 1327.   The Tenth Circuit noted in the direct appeal that, "Mr. Hahn does not allege ineffective assistance of counsel in connection with the negotiation of the appellate waiver."[5]   <u>Id.</u>, at 1329.   But the court also noted in a footnote:

> Generally, we only consider ineffective assistance of counsel claims on collateral review . . . .   Although it is well established that we will not

---

[5]The court further considered other relevant factors and found no "miscarriage of justice" on those grounds– that is, the district court did not rely on an impermissible factor such as race in sentencing Hahn; the sentence did not exceed the statutory maximum; and even if the district court had committed error in concluding it lacked discretion to run the sentences concurrently, any such error did not reach the level of a miscarriage of justice since the district court clearly had discretion under federal criminal statutes to impose consecutive sentences, and "[s]ubjecting Mr. Hahn to a sentence sanctioned by Congress does not constitute an error seriously affecting the fairness, integrity, or public reputation of judicial proceedings."   <u>United States v. Hahn</u>, *supra*, at 1329.

> enforce a waiver that is the product of ineffective assistance of
> counsel, with rare exception, a defendant must raise ineffective
> assistance of counsel claims in a collateral proceeding, not on direct
> appeal . . . .   Our holding today does not disturb this longstanding
> rule.  [Internal punctuation and quotation marks omitted].

Id., at 1327 n.13.

73.  In an affidavit attached to Hahn's habeas petition, trial counsel stated that she did not

discuss with Hahn, at any time prior to entry of his pleas, the consequences of waiving his right to

appeal the sentence if the judge ruled that consecutive sentences were mandatory.  She also said that

she "never thought about the consequences of the appellate waiver in this case," that she "made no

attempt to negotiate the waiver out of the plea agreement," and that she "did not anticipate that the

appellate waiver would adversely affect Mr. Hahn's plea in this case."  [Doc. 1, Ex. C, at ¶¶ 13-14].

She stated further:

> If I had known that the Government would have pursued a claim that
> section 924[c] required that any sentence imposed in this case would
> have to be consecutive to the sentence in the marijuana case, I would
> have strongly counseled Mr. Hahn to enter a consolidated plea in the
> [sic] both this case and the marijuana case and reserve his right to
> appeal any adverse sentencing determination.

[Doc. 1, Ex. C, at ¶17].

74.  At the end of Hahn's sentencing hearing, after the Court announced its conclusion that

it had no alternative but to run the sentences in the two cases consecutively, attorney Converse told

the Court that the defense "need[s] to evaluate the scope of" Hahn's waiver of his right to appeal.

She stated she felt "sandbagged" by the argument for consecutive sentences and notified the Court

that Hahn would probably appeal the sentence in spite of the waiver.  [SH II at 54-56].  As noted

above, Hahn did file an appeal in this case.  In dismissing the appeal on grounds that Hahn's waiver

of his appellate rights was enforceable, the Tenth Circuit explicitly rejected the notion that counsel's comments at the sentencing hearing, described above, preserved the right to appeal this issue: "these statements made after the entry of the appeal waiver and the district court's acceptance of the guilty plea cannot overcome the plain language of the appeal waiver." United States v. Hahn, *supra*, 359 F.3d at 1328  n.14.

75.  Trial counsel states in her affidavit that, had she anticipated the mandatory-consecutive ruling, she would have counseled Hahn to enter a consolidated plea in the two cases and retain his right to appeal the sentence.  But there is no remedy that Hahn could hope to achieve in this habeas proceeding that could undo the conviction and sentence in the marijuana / firearms case, and there is no way Hahn can be placed back in the position he occupied prior to the jury verdict in that case. His attorney's statement as to how she would have counseled Hahn, prior to the jury trial that led to his conviction on the § 924(c) counts, violates the admonition that a court in considering a habeas petition based on ineffective assistance of counsel must "avoid 'the distorting effects of hindsight.'" Miles v. Dorsey, *supra*, at 1474, *quoting from* Strickland v. Washington.

76.  In any event, the Court cannot say that counsel's advice to waive appellate rights was incorrect, nor that it served to prejudice Hahn.  Consecutive sentences were always a possibility.  As noted above, the Government made substantial concessions in return for Hahn's agreement to plead to seven counts, and there is no guarantee that the Government would have agreed to eliminate the appeal waiver from the plea package, even if defense counsel had thought it was an important enough point to press in plea negotiations.  Indeed, an insistence on eliminating the appeal waiver might have killed the plea agreement altogether.

77.  And the issue raised on appeal – that the district judge was incorrect in his ruling that he

had no discretion to run the sentences in the two cases concurrently – has essentially been conceded

by Hahn in this habeas petition.   He argues repeatedly in his petition that trial counsel were

incompetent in not recognizing the Court's clear and obvious lack of discretion; *see, e.g.*:

> In advising Mr. Hahn of the consequences of his plea, Mr. Hahn's attorneys told him that if he pleaded guilty and no contest . . . the District Court would  have discretion to impose sentence in this case concurrently with the sentence in the marijuana case . . . [and] the District Court Judge in this case was likely to exercise his discretion to impose sentence concurrently with the sentence in the marijuana case.   Sadly, each of these representations proved to be flatly incorrect.

[Doc. 1, at 7-8].  *And*:  "prior to the entry of the plea in this case counsel never informed Mr. Hahn

that the sentence in this case could **not** be run concurrently with the sentence in the marijuana case

as a matter of law."   [Id., at 8; emphasis in original].  *And*:

> Mr. Hahn labored under a legal mistake which prevented him from learning the direct consequences of his plea . . . .   Mr. Hahn did not learn until after his sixty-four year sentence was imposed that a mandatory, consecutive sentence in this case was not only possible or even likely, instead he learned that a mandatory, consecutive sentence was a direct and inevitable consequence of his plea . . . .

[Doc. 1, at 14].  *And*:

> Mr. Hahn's attorneys grossly represented the consequences of his plea based on an erroneous interpretation of the law . . . .   Rather than obtain the hope of a concurrent sentence, the language of the statute and controlling United States Supreme Court precedent compelled the conclusion that by pleading guilty and no contest the District Court was required to impose sentence in this case consecutive to the forty-year sentence in the marijuana case.   Counsel was clearly and manifestly deficient in misrepresenting the direct consequence of the pleas.

[Doc. 1, at 21].

   78.   Hahn thus takes the position that the law clearly dictated mandatory consecutive

sentences in this situation, and his claim of ineffectiveness is premised on trial counsel's failure to recognize and advise their client of this settled state of the law. Indeed, if Hahn took the position that the law was not so clear on this point he would have no basis for arguing ineffective assistance, since an attorney is not constitutionally ineffective merely because a judge rules against him or her on an unsettled point of law.

79. This being the case, Hahn cannot show that he was prejudiced by the waiver of his right to appeal sentencing issues. The substantive issue that he attempted to raise on appeal, which the Tenth Circuit would have addressed but for the waiver, was the question whether the district judge was, in fact, correct in his ruling that he lacked discretion to order concurrent sentences. But if resolution of this issue was so clear that failure to recognize it constituted ineffective assistance, then it would have been a futile gesture to raise the issue on appeal. The appellate waiver therefore did not prejudice him.

80. Hahn does not assert that he would have argued any other sentencing issues on appeal, if he could have done so. The Court has examined other sentencing issues which Hahn raises in his habeas petition, in the context of ineffective assistance of counsel, and finds them to be without merit, as discussed below.

81. There is no basis for habeas relief on this claim.

IV.

Ineffectiveness of Counsel in Allegedly Failing to Conduct an Adequate Investigation

a. Failure to Watch all Videotapes as Affecting the Advice to Enter a Plea

82. Hahn asserts that his attorneys did not view all of the videotapes which were seized by law enforcement officials from Hahn's home and storage unit, and which provided evidentiary support for the charges of sexual exploitation of minors. He argues that counsel was ineffective in failing to

watch all of the tapes "to determine whether there was proof beyond a reasonable doubt of every essential element of the Government's case."  However, it is apparent in this case that counsel could have made this determination by means other than viewing the entirety of the videotape evidence.

83.  Hahn's trial attorney states in her affidavit that, "[i]n conducting a pre-trial investigation in this case, I did not examine all of the video tapes in the possession of the United States Attorney's Office which formed the basis for the criminal charges in this case.  I did [*sic*] review some of the videotaped evidence proffered against Mr. Hahn until immediately prior to his sentencing."  [Doc. 1, Ex. C, at ¶ 5].  Hahn's second trial attorney did not submit an affidavit, and the record does not indicate one way or the other whether that attorney watched all of the videotapes.  Hahn argues that the failure of at least one of his attorneys to view all of the tapes led to counsel's erroneous advice that he accept the plea deal.

84.  According to the presentence report, approximately 90 videotapes depicting sexual scenes were seized from Hahn's home and storage unit.  Government counsel stated at the sentencing hearing that there were "dozens of hours" of sexual scenes involving Hahn and the minors.  [SH II at 12].  Defense counsel disputed this, asserting that there were only 10 to 12 hours of such scenes. [SH II at 43].  Even assuming the lower figure is correct, there were undoubtedly numerous hours of videotape evidence.  Hahn claims that his lawyer's failure to watch all of this prejudiced his case. The Court disagrees.

85.  Hahn's assertions that the tapes may have been doctored, or may have revealed that the boys with whom Hahn was engaging in sexual activity were actually past the age of majority, or may have shown that the victims were not under the influence of controlled substances at the time Hahn abused them, are belied by Hahn's own statements under oath at the plea hearing.  The judge went

through each count to which Hahn agreed to plead, described it in detail, and asked him whether he understood the charges made against him. [PH at 7, 9]. Hahn stated, for each count, that he understood the charges.

86. The judge then asked Hahn to state a factual basis for each plea. Hahn did so, stating without reservation or qualification that he traveled into Mexico and engaged in sexual activity with the various minors, as charged in the various counts to which he was pleading guilty, that he made visual depictions of that activity, and that he transported the videotapes back to Bernalillo County. He admitted, as to Count XV, that he gave a person identified as J.B. some pain medication, with the knowledge that it was going to put him in a "rather sedated state" and then committed a sexual crime against him. He admitted, in connection with Count XVI, that he took a controlled substance with a person identified as S.A., that S.A. was not aware of the full effect the substance would have, and that he later had sexual contact with S.A. In connection with his plea of no contest to Count XIV, Hahn and his attorneys acknowledged that the Government would be able to present to a jury a videotape depicting Hahn's sexual contact with two minors, along with the testimony of a medical doctor stating that the two boys in the videotapes were under the influence of sedating compounds at the time Hahn sexually abused them. [PH at 7-10, 22-27, 32].

87. There is no indication on the record that Hahn ever protested the accuracy of the videotapes or claimed that they were "doctored." The presentence report's description of the activity depicted in the videotapes coincides entirely with the activity to which Hahn admitted, under oath, in the plea hearing. Any allegation that the tapes were altered and are not an accurate documentation of events that actually occurred, is pure speculation and is in fact contradicted by the record.

88. Hahn's attorneys were necessarily advised by Hahn, prior to the time he stated the factual

31

basis of the counts to which he was pleading, that he did indeed engage in these activities.  There is

nothing further they could have gained by watching 10 to 12 hours of scenes of Hahn doing the things

he already acknowledged to them that he had done.  Hahn does not explain how such a viewing

would have prompted his counsel to conduct the plea negotiations any differently, or to retract their

advice to enter a plea to seven counts.   As the Tenth Circuit noted in United States v. Estrada, 849

F.2d 1304, 1307 (10th Cir. 1988):

> Even if it is true that Koch did not make an investigation into each of
> the eight counts, counsel's performance was not constitutionally
> deficient. Estrada admits that Koch listened to tape recordings of
> conversations between Estrada and his coconspirator. While this
> investigation alone may not have revealed whether there was probable
> cause for each of the individual counts the government threatened to
> bring, it was sufficient to determine the necessary breadth of the
> investigation. "[S]trategic choices made after less than complete
> investigation are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on investigation."
> Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2065-66. We cannot say
> that Koch's decision not to make a more extensive investigation fell
> below the standard of reasonable competence. Therefore, even if
> Estrada's factual claims on this point are true, they do not entitle him
> to relief.

89.  The same is true in this case.  The Court cannot say that the failure of at least one of

Hahn's attorneys to watch all of the videotapes made any difference in the outcome.

b.  Failure to Investigate Commerce Clause Challenge

90.  Hahn argues that, because trial counsel did not view the videotapes in their entirety, they

were "unprepared to challenge the interstate nexus" for the counts alleging sexual exploitation of

minors and therefore never attempted to challenge the criminal statute under which he was charged.

Hahn claims that the tapes were "possessed for his personal use" and that his "intrastate possession

of an item of pornography for personal use" had only a "tenuous connection to inter-state

commerce," and thus that the statute is unconstitutional as applied in this case.  [Doc. 1, at 29, 30].

91.  The Court rejects this argument.  Hahn was not charged only with possession of the videotapes.  Rather, 18 U.S.C. § 2251(a), under which Hahn was charged in six counts of the indictment, makes it a crime to employ, use, persuade, induce, entice or coerce any minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if he knows or has reason to know that the visual depiction will be transported in interstate commerce, or if the visual depiction was produced using materials that have been transported in interstate or foreign commerce, or if the visual depiction has actually been transported in interstate or foreign commerce.

92.  As described above, Hahn admitted at the plea hearing that he traveled to Mexico for the purpose of engaging in sexual activity with minor boys, that he videotaped this activity, and that he then brought the videotapes back into the United States across the international border.  This goes well beyond mere intrastate possession of pornography, and constitutes activity which is well within Congress's power to regulate under the commerce clause.  Hahn does not explain how counsel's viewing of the videotapes would have prompted them to raise a commerce clause issue.

93.  To the extent Hahn may be arguing that trial counsel were ineffective in failing to identify a commerce clause issue with respect to counts that were later dismissed and which charged possession of child pornography under 18 U.S.C. § 2252(a)(4)(B), the Court rejects such a claim. Trial counsel did identify the possibility of both commerce clause and multiplicity of charges issues (see discussion below) and noted both concerns in their Motion for Bill of Particulars [Doc. 25 in CR 00-1344].  Counsel ultimately prevailed on this Motion [*see*, Docs. 38, 40 in CR 00-1344].  In the ensuing weeks, the parties reached agreement on a plea.  Hahn has not shown that counsels' advice to accept the plea agreement, and thereby to waive other possible defenses, went beyond the bounds

of sound trial strategy.  The Court finds no ground for habeas relief on this claim.

c.  Failure to Consult Expert Witness.

94.  Hahn claims that his attorneys were further ineffective in failing to consult an expert witness, and that this failing was caused by their failure to view the entirety of the videotapes.  This claim is too vague to provide the basis for any habeas relief.  What sort of expert should have been consulted – whether a technical expert in videotape technology, or a psychological or medical expert – Hahn does not say.  He appears to argue that an expert might have helped ensure that there was an adequate factual basis for every element of the crimes to which Hahn pled; however, the factual basis for Hahn's plea is not at issue in this case.

95.  There is no ground for habeas relief on this claim.

d.  Failure to Challenge Multiple Prosecutions or Sentences

96.  Hahn argues that the multiple counts charged in the indictment under 18 U.S.C. § 2251, and the sentences he received for these separate counts, violate the constitutional prohibition against double jeopardy.  He contends that "his possession of videotapes in this case was a unitary act" and could not constitute multiple offenses because "each count did not require any additional fact beyond his possession which was common with all of the alleged videotape counts." [Doc. 1, at 32].  He argues further that "Section 2251 makes it a crime to possess any visual depiction of an individual who is allegedly exploited" [Doc. 1, at 33-34], and that "counsel were ineffective in failing to identify this ambiguity and persuade the Court that the Government could only charge one count of a violation of section 2251."  This is an incorrect description of the behavior that Congress intended to criminalize in enacting 18 U.S.C. § 2251,

97.  As noted above in the discussion of the commerce clause issue, § 2251(a), entitled

"Sexual exploitation of children," makes it a crime to use, employ, or entice a minor to engage in sexual acts for the purpose of producing a visual depiction of such acts, with knowledge or reason to know that the depiction will be transported in interstate or foreign commerce. Each count under § 2251 to which Hahn pled involved a different child victim. Hahn's argument that "his attorneys were ineffective in failing to argue that the unit of prosecution in this case is not the possession of any videotape but any possession of all of the videotapes seized in this case," is irrelevant to the counts under § 2251. This is not a case of simple possession of videotapes. The Court rejects Hahn's argument on this issue.

98.  To the extent that Hahn may be arguing that trial counsel were ineffective in failing to identify and challenge the possibility of multiplicity of counts under 18 U.S.C. § 2252(a)(4)(B), the possession charges which were later dismissed, the Court rejects this claim for the reasons stated above in the discussion of commerce clause issues. It is apparent that counsel did indeed identify this as a possible issue but determined that Hahn was better off making a plea deal rather than pursuing other defenses. The Court again finds no ground for habeas relief as to this claim.

e.  Failure to Investigate Basis for Motion to Suppress

99.  Hahn argues that his trial attorneys were ineffective in failing to challenge the seizure of videotapes from his home, on grounds that the search warrant was invalid. He contends that his attorneys should have filed a motion to suppress the videotape evidence thus seized.

100.  Execution of the search warrant at issue resulted in seizure of evidence used both in prosecuting the marijuana / firearms case, as well as in the present sexual abuse case. Hahn's attorneys in the marijuana / firearms case, the same counsel representing him in this case, filed a Motion to Suppress evidence obtained in the search [Doc. 46 in CR 00-82], arguing lack of probable

cause for issuance of the search warrant.  The judge in that case, the same judge who presided in this case, held a hearing on the motion and ultimately denied it.  [Doc. 72 in CR 00-82].

101.  Hahn's attorneys also filed a Motion to Suppress Physical Evidence, and a Supplemental Motion to Suppress Physical Evidence in the present sexual abuse case [Docs. 26, 42 in CR 00-1344].  A hearing was set on these motions but before the motions could be heard, Hahn's attorneys had negotiated the plea agreement with the Government and, on the date set for the suppression hearing, Hahn entered his pleas.

102.  As discussed above, the plea agreement reached by Hahn resulted in substantial concessions by the Government, including dismissal of ten counts of the indictment and avoidance of trial and public airing of the extensive evidence of Hahn's sexual abuse of minors, evidence which counsel conceded would put him at risk in a prison setting.  Hahn also received sentencing benefit by acceptance of responsibility.  Counsel was not ineffective in advising Hahn to accept the plea agreement.  Hahn had already lost his bid, in the marijuana / firearms case, to suppress the evidence seized pursuant to the search warrant, and counsel could well have decided that the two pending motions to suppress in this case had little chance of success.  In any event, the Court rejects Hahn's assertion that his attorneys failed to present arguments challenging the search warrant due to their failure of investigation, as there is no indication on the record that counsel failed to make an adequate investigation of the basis for a motion to suppress.  Hahn has not overcome the presumption that his counsel's advice was within the bounds of sound defense strategy.  Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995).

V.

Alleged Ineffectiveness of Counsel at Sentencing

103.  Hahn next argues that his trial attorneys were ineffective at sentencing in that they failed

to submit a timely request for a downward departure, were not prepared to address a request for sentencing enhancement based on a vulnerable victim, and failed to challenge effectively the presentence report and guideline sentencing range.  He also reiterates his earlier arguments that Hahn's attorneys were ineffective in that they were caught by surprise when the Government joined the recommendation of the Probation Department for consecutive sentences as between this case and the marijuana / firearms case, and because they failed to challenge the appellate waiver.  [Doc. 1, at 36-37].  The Court finds no ineffective assistance with respect to these claims.

104.  Counsel did in fact submit a Motion for Downward Departure [Doc. 54 in CR 00-1344] and an Alternative Motion for Downward Departure [Doc. 58 in CR 00-1344].  These motions were denied by the court.  Hahn's counsel also filed Objections to the proposed adjustment for a vulnerable victim [Doc. 55 in CR 00-1344] and argued this issue at the sentencing hearing.  Hahn prevailed on this issue.  Thus, Hahn's assertions that counsel failed to raise these issues are contradicted by the record.

105.  With respect to the contentions that counsel were ineffective at sentencing in failing to anticipate the mandatory-consecutive issue and in failing to challenge the appellate waiver, the Court has already held that Hahn failed to demonstrate that any such failures were prejudicial to his case.

106.  The Court finds no basis for habeas relief in connection with counsel's representation at sentencing.

## VI.
## Alleged Conflict of Interest by Counsel

107.  Hahn argues that he was prejudiced by the fact that his attorneys continued to represent him after it became apparent that they'd made mistakes amounting to ineffective assistance of counsel.  He contends that, at that point, counsel should have disclosed their own ineffectiveness and

cited it in arguing for invalidation of the appellate waiver.  He further claims that this conflict of interest continued into the appeal, when counsel again failed to raise the issue of ineffective assistance.

108.  The Court rejects this claim.  Counsel was not required to raise an issue of ineffective assistance on appeal.  In upholding Hahn's appeal waiver, the Tenth Circuit stated that while ineffective assistance can serve as a ground for invalidating a appellate waiver; "we only consider ineffective assistance of counsel claims on collateral review."  United States v. Hahn, *supra*, 359 F.3d at 1327 n.13.

109.  The Court has already held that counsel's conduct in negotiating the appeal waiver did not constitute ineffective assistance, as the plea agreement as a whole served Hahn's interests:  it resulted in ten counts being dismissed and allowed him to avoid trial.  It is unclear what Hahn's counsel could have done at the sentencing hearing that would have made any difference in the ultimate result with respect to the appellate waiver.  At that point, they could not have excised the appellate waiver out of the plea agreement, and any attempt to do so would have resulted in a re-negotiation of the entire agreement; there is no reason to believe that defense counsel would have been able to achieve a better result by taking that course.  If at the time of sentencing they had successfully moved to withdraw the pleas, a motion which might well have been denied in any event, Hahn would have been placed back in the position he faced at the beginning of the case:  trial on a 17-count indictment based on substantial videotape evidence, which even Hahn's attorneys labeled "inflammatory," and exposure to a significantly longer sentence.  This strategic decision to stick with the plea deal, even when it was apparent that counsel (as well as the Court and the Government) did not anticipate the ultimate mandatory-consecutive ruling, was not ineffective assistance, as discussed

above.

110.  The Court finds no basis for habeas relief as to this claim.

VII.
Cumulative Error by Counsel

111.   The Court has already found that, as to each of Hahn's claims, his attorneys'
performance did not fall below that expected of reasonably well qualified counsel or, if it did, that he
was not prejudiced thereby.  A cumulative-error analysis should evaluate only the effect of matters
determined to be error, not the cumulative effect of non-errors.  Brecheen v. Reynolds, 41 F.3d 1343,
1370 n.23 (10th Cir. 1994).  There is no basis for inquiring into cumulative effect.

VIII.
Alleged Prosecutorial Misconduct

112.   In her affidavit, Hahn's trial attorney said that the Assistant U.S. Attorneys prosecuting
this case were aware that Hahn's counsel intended to argue for a concurrent sentence but never,
during the course of plea negotiations, informed defense counsel that they believed the sentence in
this case had to be imposed consecutively to that in the marijuana case due to the language of §
924(c).  Indeed, she says that Government counsel never told the defense, prior to the sentencing
hearing, that they would argue the Court lacked discretion to impose concurrent sentences.  [Doc.
1, Ex. C, at ¶ 10].  Hahn argues that this was misleading and rendered his plea involuntary.

113.   When a plea rests in any significant degree on a promise of the prosecutor, so that it can
be said to be part of the inducement for the plea, that promise must be fulfilled to maintain the
integrity of the plea.  Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971); United
States v. Hand, 913 F.2d 854, 856 (10th Cir. 1990).  The petitioner has the burden of proving the
underlying facts establishing the promise and breach by the prosecutor.  Cunningham v. Diesslin, 92

39

F.3d 1054, 1059 (10th Cir. 1996).  Hahn has not met this burden.

114.  Hahn characterizes as a "material misrepresentation" the Government's response at the plea hearing, when the Court asked what effect the prior conviction in the marijuana / firearms case would have on the sentence in the sexual abuse case.  Government counsel stated only that the prior conviction would raise Hahn's criminal history category and  did not raise the issue of mandatory consecutive sentences.  [PH at 19-20].

115.  The Court cannot agree that Government counsel's response to the Court's question was a "material misrepresentation," or that the Government somehow promised the defense that it would not argue for mandatory consecutive sentences.  The question the Court asked was "how Mr. Hahn's convictions in January would affect sentencing under the Guidelines?  Will that increase his criminal history category?"  [PH at 19].  The judge did not ask about the effect of the prior conviction under the statute.

116.  There is a factual dispute in this case as to the discussions between defense counsel and Government attorneys regarding the mandatory-consecutive sentences issue, but the Court does not find it to be material to resolution of the issues.  As noted above, defense counsel told the judge at sentencing on August 28, 2001 that she felt "sandbagged" by the Government's disclosure, only days before the sentencing hearing, that it would take the position that § 924(c) stripped the judge of his discretion to run the two sentences concurrently.  At the hearing, Hahn's counsel told the Court that the parties agreed that the defense could argue in favor of concurrency, and the Government could argue for consecutive sentences.  Government counsel strongly denied that the parties had ever had such a discussion.  [SH II at 54-55].

117.  Regardless of who, if anyone, was at fault for failing to recognize and raise the issue

earlier in the proceedings, Hahn cannot show that he was prejudiced by any actions of the prosecution.  As discussed above, any failure by the Court or his own counsel to advise him of the mandatory-consecutive sentences rule did not render his pleas constitutionally involuntary, because he cannot show a reasonable probability that if he had known of the judge's lack of discretion to order concurrency, he would not have entered the pleas but would instead have insisted on going to trial.  Any failure of the prosecution to discuss the issue with defense counsel is likewise unavailable as a ground for habeas relief, because Hahn has not shown prejudice.

IX.
Booker / Blakely Challenge

118.  Hahn argues that the sentence he received in the sexual abuse case was enhanced by the previous conviction in the marijuana / firearms case and that this violates the rule of United States v. Booker, – U.S. – , 125 S. Ct. 738 (2005), and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), because the fact of the marijuana / firearms conviction was not alleged in the indictment, and was not proved beyond a reasonable doubt or admitted by Hahn.

119.  Hahn concedes that this argument is precluded by Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), which held that the fact of a prior conviction is an exception to the rule that all facts which raise the sentence beyond the prescribed maximum must be submitted to a jury and admitted by the defendant.  However, Hahn argues that Almendarez-Torres:

> may ultimately prove to be invalid and inapplicable in this case in light of the United States Supreme Court's ruling in Booker:  as Justice Thomas recognized in his concurring and dissenting opinion in the recent case of Shepard v. United States, a majority of the United States Supreme Court has now gone on record to recognize that Almendariz-Torres [sic] was wrongly decided.

[Doc. 1, at 42-43, n.7].

120.  Hahn's claim, based on an argument that <u>Almendarez-Torres</u> is no longer good law, must be rejected.  This Court is bound to follow Supreme Court and Tenth Circuit precedent.  As recently as May 2005, the Tenth Circuit explicitly rejected the argument that Hahn raises in this claim:

> Although we acknowledge that <u>Almendarez-Torres</u> has been called into question, it has not been overruled . . . [and] "as an inferior federal court we have the responsibility to follow directly applicable Supreme Court decisions."  <u>United States v. Ordaz</u>, 398 F.3d 236, 241 (3d Cir. 2005).  "The holding in <u>Almendarez-Torres</u> remains binding law, and nothing in <u>Blakely</u> or <u>Booker</u> holds otherwise . . . ."  Furthermore, the Supreme Court in <u>Blakely</u> unequivocally restated the proposition announced in <u>Apprendi</u>, 530 U.S. at 490, 120 S. Ct. 2348: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed . . . maximum must be submitted to a jury, and proved beyond a reasonable doubt . . . .  Furthermore, in <u>Booker</u>, the Supreme Court reaffirmed the proposition that the fact of a prior conviction is an exception to factual jury submissions.

<u>United States v. Perez-Hernandez</u>, 133 Fed. Appx. 475, 477-78 (10th Cir. May 23, 2005).

121.  This claim can afford Hahn no habeas relief.

## X.
## Alleged Partiality / Impairment of Judge Issuing Search Warrant

122.  Finally, Hahn asserts that the state district judge who issued the search warrant for Hahn's home, thus triggering the search that resulted in discovery of the marijuana, firearms, and videotapes of sexual activity, was impartial.  He bases this argument on the fact that the state court judge was later arrested for driving under the influence of alcohol and for possession of cocaine, and later admitted that he was addicted to drugs and alcohol.  In addition, the warrant was issued on December 30, 1999, "a time of year known for the liberal use of intoxicant by alcoholics and drug addicts."

123.  Hahn argues that these facts raise the issue of whether he was deprived of his

constitutional right to a "mentally competent tribunal," implying that the state court judge might have been under the influence of mind-altering substances, and thus impaired or subject to coercion, at the time he issued the search warrant.  [Petition, Doc. 1, at 45-46].

124.  Hahn presents no evidence whatsoever to support the allegations that the district judge was impaired at the time he issued the search warrant, and he does not challenge the factual basis for the warrant.  He asks for an evidentiary hearing, but the Court will not order an evidentiary hearing on the basis of mere speculation.  In any event, habeas relief is not available to remedy constitutional violations occurring prior to petitioner's guilty plea, as "guilty pleas . . . foreclose direct inquiry into the merits of claimed antecedent constitutional violations . . . .  The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence of such an antecedent constitutional infirmity."  Tollett v. Henderson, 411 U.S. 258, 266, 93 S. Ct. 1602, 1607-08 (1973).

125.  In cases where the petitioner alleges ineffective assistance of counsel in the context of plea negotiations, "claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief."  Id., 411 U.S. at 267.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [of competent representation].

Id.

126.  In the present case, the Court has already rejected Hahn's claim that his pleas were involuntary in the constitutional sense due to ineffective assistance of counsel.  Any alleged bias or

impairment on the part of the state district judge who issued the search warrant has no bearing on the issue of ineffective assistance of counsel; Hahn does not even argue that his attorneys were ineffective in failing to raise this issue in the criminal proceedings nor that their failure to do so affected the plea negotiations in any way.

127.   Hahn's pleas of guilty and no contest therefore bar any consideration of the claim that his constitutional rights were violated due to alleged impairment or bias of the state district judge at the time he issued the search warrant, and the Court rejects this claim as grounds for habeas relief.

XI.
Evidentiary Hearing

128.   Hahn seeks an evidentiary hearing on his petition.   An evidentiary hearing in a case brought under 28 U.S.C. § 2255 is appropriate, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."   The petitioner bears the burden of establishing that he is entitled to relief and to an evidentiary hearing, and the Court must "take petitioner's factual allegations 'as true, except to the extent that they are contradicted by the record or are inherently incredible, and to the extent that they are merely conclusions rather than statements of fact.'"   Otero-Rivera v. United States, 494 F.2d 900, 902 (1st Cir. 1974).

129.   The Court is cognizant that it cannot simply decide not to give credence to Hahn's statement that he would have rejected the plea agreement and gone to trial if he'd known about the mandatory consecutive rule.   However, as discussed above, this assertion is contradicted by the record in light of the risks Hahn would have faced by going to trial, not only in terms of an exponentially higher sentence, but also because of his and his counsel's concern that the evidence necessary to convict him, presented at a public trial, would put him at greater risk within the prison system.   Hahn was clearly going to be spending time in prison on the marijuana / firearms charge, so

these concerns were more than hypothetical.

130.  The Court finds that an evidentiary hearing is not warranted in this case.

## **<u>Recommended Disposition</u>**

That all claims in Hahn's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28

U.S.C. § 2255 be denied and the case be dismissed with prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge

45